United States District Court
for the
Southern District of Florida

| Ricardo Garcia, Plaintiff, | ) |
|---|---|
| | ) |
| v. | ) |
| | ) Civil Action No. 18-20509-Civ-Scola |
| Scottsdale Insurance Company, | ) |
| Defendant. | ) |

**Omnibus Order on Motions to Exclude Expert Testimony**

Plaintiff Ricardo Garcia seeks to recover from his insurer, Scottsdale Insurance Company, for damages caused by a leaking water supply line in his kitchen. (Def.'s Mot. to Exclude, ECF No. 42, 1; Pl.'s Resp., ECF No. 46, 1–2.) The only count remaining in Garcia's amended complaint alleges Scottsdale breached the parties' contract by failing to fully cover and pay for damage Garcia says is covered under his insurance policy. (Am. Compl., ECF No. 14.) Garcia and Scottsdale have both asked the Court to exclude the testimony of each other's expert witnesses: Scottsdale urges the Court to exclude Garcia's inspector Edgard Alex De Olazabal (Def.'s Mot. to Exclude, ECF No. 42); and Garcia seeks to exclude Scottsdale's property damage expert, Art Newman (Pl.'s Mot. to Exclude, ECF No. 40). After review, and for the following reasons, the Court **denies in part and grants in part** Garcia's motion to exclude (**ECF No. 40**) and **grants** Scottsdale's motion to exclude (**ECF No. 42**).

1. **Legal Standard**

    A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The threshold question in determining the admissibility of an expert's testimony is whether the testimony helps the fact finder resolve an

ultimate issue in the case.[1] *See* Fed. R. Evid. 702 Advisory Committee's Note; *accord* Fed. R. Evid. 704 Advisory Committee's Note. While an opinion is not objectionable just because it embraces an ultimate issue, testimony that offers nothing more than what lawyers for the parties can argue in closing arguments is not helpful. Fed. R. Evid. 704(a); *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee's Note.

It is not the role of the trial court to make conclusions about the persuasiveness of the expert's opinions, rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (quotations and citations omitted). "[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Id.* (quotations and citations omitted).

Even if proposed expert testimony is admissible under Rule 702, the evidence may nonetheless still be excluded if it is irrelevant or if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403; *accord Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309–10 (11th Cir. 1999). Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors, . . . courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263.

### 2. The Court mostly denies Garcia's motion to strike or preclude Scottsdale expert Art Newman's testimony

Scottsdale has identified Art Newman as its expert, intending to rely on him to opine on the limited issue of whether there is currently any remaining water damage within Garcia's house. (Def.'s Resp., ECF No. 48, 3.) Garcia submits Newman should be stricken as an expert, entirely, because he "relied on Defendant's counsel's inaccurate information in formulating his opinion." (Pl.'s Mot. at 5.) Garcia also vaguely asserts Newman's testimony should be excluded because Newman is "merely serving as a conduit for the opinion of

---

[1] An "ultimate issue" is "[a] not-yet-decided point that is sufficient either in itself or in connection with other points to resolve the entire case." *Black's Law Dictionary* 908 (9th ed. 2009).

another." (*Id.* at 6.) Alternatively, Garcia asks the Court to preclude Newman "from testifying that (1) no additional work needs to be completed and that (2) Defendant's estimate reflects the amount needed to restore the property back to its pre-loss condition." (*Id.* at 6.)

To the extent Garcia complains about the information upon which Newman bases his opinion, these particular alleged weaknesses go only to the weight of Newman's opinions and not their admissibility. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993); Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed.") (emphasis added); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("Questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

Garcia's claims—that Newman is merely a conduit and that he should be precluded from testifying as to certain opinions—are vague and unsubstantiated. Notably, Garcia does not suggest Newman should be excluded based on his qualifications, methodologies, or whether his testimony will assist the trier of fact. Instead, his quarrel, at bottom, is focused really on his disagreement with Newman's conclusions. This is an insufficient basis upon which to exclude his expert testimony. On the other hand, the Court notes that Garcia asks the Court to preclude Newman from testifying that Scottsdale's estimate reflects the amount needed to restore Garcia's property back to its pre-loss condition. While this may be a deduction one might make from Newman's opinions, combined with other evidence, this contention itself is not actually disclosed as part of Newman's report. Therefore, it is not something he would be permitted to testify about anyway. *See Singletary v. Stops, Inc.*, 609-CV-1763-ORL-19KR, 2010 WL 3517039, at *10 (M.D. Fla. Sept. 7, 2010) ("A primary purpose of the expert report disclosure rule is to narrow the issues for trial by limiting expert testimony to the matters disclosed in the expert report.") Without more, the Court finds no support for Garcia's vague and unsubstantiated claims that Newman is acting as a mere conduit for Scottsdale and that he should not be permitted to testify as to the opinions in his report. The Court thus largely **denies** Garcia's motion to strike (**ECF No. 40**), **granting it part** to the very limited extent as provided above.

3. **The Court grants Scottsdale's motion to exclude the testimony of Garcia's expert witness, Exgard Alex de Olazabal.**

Garcia retained Exgard Alex de Olazabal as an expert to opine on the extent of Garcia's damages and whether Scottsdale sufficiently indemnified him for his losses. (Pl.'s Resp. ¶ 7, ECF No. 46, 2.) In seeking to exclude Olazabal,

Scottsdale does not take issue with his qualifications or methodologies. Instead, Scottsdale argues Olazabal's testimony is irrelevant, conclusory, and unsubstantiated.

Olazabal's purported expert opinion is long on generalities and short on specifics. Despite these defects, Garcia insists "Olazabal's expert testimony will specifically assist a jury in determining whether Defendant sufficiently paid Plaintiff for his damages." (Pl.'s Resp. at 9.) But the entirety of Olazabal's proffered opinions, as presented in his report, are as follows:

> The scope of repairs that were included in the Scottdale estimate under[]estimates several items and pricing differentials that must be considered when repairing a property after a loss. While the Scottsdale estimate accounts for general items considered when replacing a kitchen, it does not take into account simple items that are glaringly obvious to anyone who has replaced a kitchen. Items such as the damaged material being considered, plumbing and electrical items that are clearly necessary for repairing a property to pre-loss condition. The carrier should also include allowances for permits that must be pulled prior to any work commencing. This would be the first step to starting a repair any residence.
>
> In addition to the kitchen cabinets and walls that were affected, several items located in adjacent rooms must be considered. There are several adjoining rooms that must be considered to bring a property to pre[]-loss condition. Once repairs are started in one area, simple items must be accounted for in order for the property to be restored. It is clear by the estimate prepared by the insurance carrier and by our site inspection that many of these items were not considered by the insurance carrier. Many of these items consist of, on-site storage of personal property during repairs, as well as the continuous nature and open line of sight between different areas of the home that would make a repair in one area affect another even if not directly damaged from the initial loss.
>
> Other items that were not considered by the insurance carrier that are necessary in any repair of a home include cleaning of the home after the repairs have been made and supervision of the workers that are performing the repair. It is common practice to have on-site supervision to ensure that repairs are completed properly and in compliance with local and State building code as well as OSHA guidelines for worker safety.

(Olazabal Expert Rep., ECF No. 42-2, 2.) Olazabal then concludes his report:

> We have completed our assignment as requested and inspected the home. It is my opinion that Scottdale Insurance Company did not

> consider many items that they should have known would be necessary to fully effectuate property repairs. Based on my experience in insurance industry for over 13 years and my experience as a licensed general contractor in the field, along with my expert knowledge of the Xactimate program that is used to produce the Scottsdale estimate, the insurance company underestimated this plumbing loss in the kitchen. This underpayment would not allow the homeowner to put their home back to its pre-loss condition.

(*Id.*) The majority of Olazabal's opinion is so "imprecise and unspecific" or "not adequately explained," that it should be excluded. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting *Frazier,* 387 F.3d at 1266 for the proposition that it is not an abuse of discretion for a district court to "conclude[] that an 'imprecise and unspecific' expert opinion would not assist the jury, and observing that the expert's 'imprecise opinion easily could serve to confuse the jury, and might well [mislead] it'"). And while certain aspects of Olazabal's opinion are less vague, they still fall far short of "specifically assist[ing] a jury in determining whether Defendant sufficiently paid Plaintiff for his damages" as Garcia claims they do. (Pl.'s Resp. at 9.) For example, Olazabal explicitly points to Scottsdale's failure to include the cost of the following in its estimate: (1) obtaining permits (2) "on-site storage of personal property during repairs"; (3) "cleaning of the home after the repairs have been made"; and (4) "supervision of the workers that are performing the repair." (Olazabal Rep. at 2.) However, Olazabal fails to specify what the actual costs of these items would be and whether they would have been, in any event, covered by the amounts offered by Scottsdale. Indeed, during his deposition, Olazabal refused to provide even a ballpark figure regarding how much more he believes Scottsdale owes Garcia:

> Attorney: And how much more is [Garcia] owed?
>
> Olazabal: I'd have to put together an estimate to tell you.
>
> Q: So you're not prepared to answer that question today?
>
> A: Your question being?
>
> Q: As to how much additional money is owed or that you believe Scottsdale needs to tender in order to—
>
> A: The exact amount, no.
>
> Q: Do you have a ballpark?
>
> A: I have not prepared an estimate, but it would be more than what was estimated.
>
> Q: How much more?
>
> A: A lot more.

> Q: How much is a lot more?
>
> A: I'd have to put together an estimate to tell you.

(Def.'s Mot. at 6 (quoting Olazabal Dep. Tr. at 25:11–26:10).) Garcia has failed to explain how Olazabal's expert testimony, devoid of any reference to specific dollar figures, will assist the jury in determining whether Scottsdale has sufficiently paid Garcia for his damages. Notably, his report thoroughly defeats the purpose of Rule 26(a)(2) which was implemented, in part, to provide "opposing parties [with] a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26 advisory committee's note (1993). Indeed, the report required under this rule is intended to prompt experts "to set forth the substance of the direct examination." *Id.* To the extent Plaintiff's counsel anticipated Olazabal would testify as to specific dollar amounts that Olazabal believes Scottsdale owes Garcia, Olazabal's report utterly fails. Further, his report does not provide any link between his conclusions and the evidence that he claims to have reviewed. Without more, the Court is not convinced that Olazabal's proffered testimony, as presented in his report, is relevant. The Court thus **grants** Scottsdale's motion to exclude Olazabal's proffered expert testimony (**ECF No. 42**).

### 4. Conclusion

As set forth above, the Court largely **denies** Garcia's motion to exclude, **granting** it only **in part** on the narrow grounds described above (**ECF No. 40**) and **grants** Scottsdale's motion to exclude (**ECF No. 42**).

**Done and ordered** at Miami, Florida, on March 22, 2019.

_____
Robert N. Scola, Jr.
United States District Judge